ANNA E. O'BRIEN, PETITIONER-APPELLANT, v. FIRST CAMDEN NATIONAL BANK & TRUST COMPANY, RE-SPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 8, 1961—Decided June 13, 1961.

Before Judges PRICE, GAULKIN and SULLIVAN.

*Mr. Frank W. Thatcher* argued the cause for petitioner-appellant (*Mr. Joseph R. Moss,* attorney).

*Mr. A. Millard Taylor* argued the cause for respondent-respondent.

The opinion of the court was delivered by

PRICE, S. J. A. D.   Petitioner Anna E. O'Brien seeks to set aside a judgment in the County Court based on an opinion reported at 64 *N. J. Super.* 127.   Said judgment, dismissing her dependency claim petition, reversed a judgment in the Workmen's Compensation Division which had awarded her compensation for the death of her husband Joseph O'Brien.   His death on September 11, 1958 resulted from injuries sustained two days earlier when he was struck by an automobile while he was walking across East Browning Lane, a public highway in the Borough of Bellmawr.

The sole question to be resolved on this appeal is whether the fatal accident arose out of and in the course

of O'Brien's employment with respondent, First Camden National Bank & Trust Company; specifically, whether, under the circumstances of this case, decedent's death might be deemed compensable on one of the following theories advanced by petitioner: (a) that decedent when fatally injured was engaged in performing a "special service" for respondent; (b) that he was then engaged in an activity encompassed by his regular daily employment; (c) that at the time he was engaged in the accomplishment of a "dual purpose," including one primarily in the interest of the bank; or (d) that recovery was justified on the "positional risk" doctrine or the "if but for the employment" doctrine, citing *Olivera v. Hatco Chemical Co., 55 N. J. Super.* 336 (*App. Div.* 1959), certification denied 30 *N. J.* 557 (1959).

Respondent asserts that none of the foregoing contentions is justified by the evidence and that the County Court properly denied petitioner recovery. The fatal accident, asserts respondent, occurred while decedent was en route from his home to the place where his daily work began and hence was noncompensable.

The facts are not in dispute. On August 4, 1958 respondent, having its main office at Camden, hired O'Brien to be a custodian or guard at its newly constructed branch bank located at the northwest corner of Black Horse Pike and Browning Road in the Borough of Bellmawr. The branch was actually opened to the public for business on August 14, 1958.

From August 4 to August 14, with the exception next hereinafter mentioned, O'Brien reported for work daily at 8:00 A. M. at the branch bank where he performed general janitorial duties while the work incident to the interior decoration of the building, preparatory to its opening, was being completed. Shortly before August 14 decedent, at respondent's direction, went to its main office where, for a day or two, he received orientation and instruction with reference to his prospective duties as guard and custodian.

From the time of his employment to the date of his death decedent lived at his son's home at Creek Road, Bellmawr, located six blocks west of the site of the branch bank.

As a result of conferences between respondent's manager and the chief of police of the Borough of Bellmawr, it was arranged for "security reasons" that on each morning commencing August 14 O'Brien was initially to go to the police station located on the north side of East Browning Lane, about 500 feet east of the branch bank building, where a police officer duly assigned would join him and accompany him to the bank. Pursuant to that arrangement, decedent's son, as an accommodation to his father, transported him each work day to a point on the south side of East Browning Lane directly opposite the police station. Decedent would alight from his son's car, cross the road to the station and await the arrival of a police car whose driver would be summoned by radio. The police-operated vehicle would then transport decedent to the bank where, in the presence of the police officer, he would unlock the bank door and enter the building. That procedure was followed up to the day of the accident and thereafter continued by another employee of respondent who took decedent's place.

At about 7:55 A. M. on September 9, the morning of the fatal accident, decedent, as above stated, alighted from his son's car opposite the police station and, as he was crossing the road to go to the station, was struck by an automobile.

Petitioner concedes, as expressed in her counsel's brief, "that ordinarily" when an employee is injured "on his way" to or from "his regular place of employment" such "injury is not work-connected." She contends, however, that decisions so holding are not here applicable. She asserts that the accident, happening under the circumstances above outlined, should, under one of the aforesaid theories advanced by her, be deemed to have arisen out of and in the course of her husband's employment and that the County Court erroneously determined that it occurred simply while decedent was on his way to work.

To support her contention petitioner relies principally on testimony of the chief of police with reference to conferences between him and the branch manager preceding August 14, at which the aforesaid arrangements for police protection at the branch bank were made. The discussion, as outlined in the chief's testimony, centered on the need for such protection at the opening of the bank for business each morning. He testified that the branch manager agreed with his observation that the "most risky time for the bank * * * was when the bank was opened in the morning" and that the "preliminary arrangement was to have Mr. O'Brien report to the police station * * * so that we could call the radio car in and have them take Mr. O'Brien back to the bank where he opened the door."

On the use of the aforesaid words "preliminary arrangement" petitioner bases her primary contention that decedent at the time of the aforesaid accident was not simply on his way to work but was engaged in "special service" for respondent. She argues, as expressed in her brief, that he "was hired as a guard at the bank"; that the "bank opened at 8:00 A. M. That was the time he was expected to commence his work." From this premise petitioner, adopting a definition of "special services" from the opinion in *Moosebrugger v. Prospect Presbyterian Church,* 12 *N. J.* 212, 215 (1953), asserts in her brief: "When the decedent was told to go to the Police Station, he certainly was doing some work [or, as expressed in *Moosebrugger,* rendering a service] 'out of the ordinary, unusual or one not contemplated under the terms of the employment.'" For emphasis, petitioner's brief poses the question whether decedent would have been discharged if he had "refused to go to the Police Station" and if, instead, he had proposed that he "would go directly to the bank." The brief then suggests: "Can anyone say that the instruction to report to the Police Station was not incident to the job of decedent?" To justify the alleged pertinency of the posed questions petitioner draws the following phrase from the opinion in *Ferragino v. McCue's Dairy,*

128 *N. J. L.* 525, 527 (*Sup. Ct.* 1942): "* * * Ferragino .was under orders from his master, and it is not easy to see how he could have refused to obey except at the risk of losing his job."

The definition of "special services" in *Moosebrugger, supra,* the aforesaid posed questions and the quoted phrase from *Ferragino, supra,* afford no justification for the position taken by petitioner under the facts in the case at bar. The words "preliminary arrangement" are treated by petitioner as the equivalent of a "temporary arrangement," for which concept the proofs afford no support. Clearly it was an arrangement made prior to the formal opening of the new bank and to be followed each bank day thereafter. There was nothing temporary about it. When the case was tried, nearly a year later, the arrangement was still in force. The simple fact and only justifiable inference from the proofs is that, instead of decedent's commencing his daily work at the branch bank building, his daily job assignment as the result of the "security" plan originated at the police station to which by respondent's instruction he was to go each morning for the purpose above outlined. Until he arrived at the station he was on his way to work. The accident occurred within the "going to and coming from rule" enunciated in *Gullo v. American Lead Pencil Co.,* 119 *N. J. L.* 484 (*E. & A.* 1938); *cf. Makal v. Industrial Commission,* 262 *Wis.* 215, 54 *N. W. 2d* 905 (*Sup. Ct.* 1952).

In *Ferragino, supra,* petitioner, who worked for a family corporation engaged in the retail milk business and who had no fixed hours of employment, occasionally did work having "no obvious connection with the milk business," for which he received no extra wage. On the day in question one of the officers of the corporation, with authority to so act, directed petitioner and other employees to move a piano which had been used at a bazaar conducted by a church, a customer of respondent. Ferragino was injured in an automobile accident while going from the dairy plant to the church. The court (128 *N. J. L.,* at *p.* 527) held that while

moving "a church piano from one spot to another on a church property is not ordinarily *per se* an incident to the dairy business, * * * it may become so when done, as here, on the order of the employer for a customer in the effort to build up good will and to retain the customer's friendly interest." No similarity exists between such "special errand" case and one where the issue, as in the case at bar, turns on the answer to the question as to where decedent, by respondent's direction, was to begin each day's work. Respondent had the right to require that petitioner each morning should start from the police station for the bank in a police car driven by a police officer The fact that the inception of his daily work did not occur on the bank premises does not mean that while travelling each work day *from his home to the police station* decedent was engaged in an "out of the ordinary," "unusual" or "special" service which changed the character of his daily ride in his son's car from an ordinary "going to" work procedure to a "special errand" so that, if he suffered accidental injury while on the public highway before reaching the police station such injury would be deemed to arise "out of and in the course of" his employment.

Petitioner, apparently realizing respondent's right to direct decedent where to begin his day's work, attempts to divide decedent's employment into two categories: First, his guard duties at the bank; and second, the actual trip from his home to the police station, a trip characterized by petitioner as a "special errand," an added or supplemental task. As a matter of fact it was nothing more than a daily journey by decedent to reach a destination designated by respondent as the place from which the transportation arrangements made by it and the police authorities became operative. To go daily from the police station to the bank in the police car to enable decedent to approach the bank and open the door in the presence of the officer was just as much a part of decedent's job as guard or custodian as were his activities at the bank during the balance of the day.

His various tasks were a unit and petitioner's attempt to divide them into separate categories, labeling one a "special errand" and the other "regular work" is unrealistic and unwarranted. Petitioner concedes that if under respondent's instruction decedent's initial daily destination were respondent's bank building, his trip would simply be "going to" work. We perceive no justification for changing the true nature of that trip and converting it into something clearly never contemplated by the parties, simply because the property of respondent was not the end of that journey. The fact that the accident occurred on the public highway at a place only 50 feet from the police station on decedent's way thereto cannot justify compensation any more than if the accident occurred within the same distance of the bank building if decedent were to go directly there from his home.

Nor do we find merit in an alternative contention advanced by petitioner, i. e., that on the day of the fatal accident decedent's "employment began" when he left his home, a contention initially asserted by her counsel at the hearing in response to a specific question by the Judge in Compensation. Her counsel then said that while "normally * * * a man starts to work when he gets to his place of employment," in the case at bar decedent's "actual employment began from the moment the man left home, because the moment he left home he was already in the service of his employer." We disagree.

In traversing the area between his home and the police station in the morning and again while returning home from the bank at the end of the day's work in his son's car, decedent occupied the same status as that of any employee going to and from his work. Respondent had no control over the means of conveyance decedent might employ on leaving his home, by what route he would reach the station, whether he would alight from his son's car across the street from the station or be driven to the station entrance. In fact the testimony shows that the reason decedent's son each morning stopped his car on the south

side of the street, where decedent alighted as aforesaid, was because the son's daily trip, during the early portion of which his father rode with him as a passenger, led to a neighboring municipality on a course continuing in an easterly direction past the police station. Until decedent's arrival at the station he was in complete control of his own movements. The hazards of the highway to which he was exposed in reaching the station were no greater than those to which the members of the general public were exposed in their use of the highway. *Fenton v. Margate Bridge Co.,* 24 *N. J. Super.* 450, 456, 461 (*App. Div.* 1953), certification denied 12 N. J. 350 (1953). Although, in attempted support of still another theory of compensability to which reference is hereinafter made, petitioner in her brief mentions the fact that the police station was "beyond" (east of) the bank, she attaches no significance thereto in connection with the point presently considered. Here she maintains that on the entire route from decedent's home, slightly over a mile from the police station, decedent was in the "service of his employer." As admitted on oral argument the adoption of that theory would mean that if decedent had sustained the fatal injury as a result of a collision between his son's car and another vehicle on entering Creek Road from the home driveway, petitioner would have a compensable claim on the basis of her asserted position that such an accident would arise out of and in the course of decedent's employment.

Petitioner next invokes the "dual purpose" (sometimes referred to as the "mixed purpose") doctrine in support of her claim, and among other references cites in support of her contention *Martin v. Hasbrouck Heights, &c. Savings Ass'n,* 132 *N. J. L.* 569 (*Sup. Ct.* 1945); *Marks' Dependents v. Gray,* 251 *N. Y.* 90, 167 *N. E.* 181 (*Ct. App.* 1929); and 1 *Larson, Workmen's Compensation Law, sec.* 18.00, *p.* 240 *et seq.* The cases under the dual purpose doctrine uniformly involve situations where a specific trip for the employer's benefit is combined with a personal mission

of the employee. These include cases where an employee, in the course of his normal journey off the premises to and from work, performs some concurrent service for his employer. Illustrative thereof are cases cited in 1 *Larson, Workmen's Compensation Law,* sec. 18.21, *p.* 247 *et seq.* The doctrine, in essence, presupposes one journey with two objectives, one personal, the other employer-dictated. The cited cases and many others in this and other jurisdictions considering dual purpose trips do not reach the crucial ·question presented in the case at bar, *i. e.,* where, under the circumstances here present, did the employment of decedent each morning begin. Petitioner states in her brief that *"one of the purposes of the trip* was to go to the Police Station.*"* (Emphasis supplied) As a matter of fact the sole purpose of the daily trip by decedent was to go to work, which, under the arrangements made by his employer, required him to go to the police station where the respondent had directed that he should commence his daily duties.

Petitioner next offers as a basis for her claim the "positional risk" or "if but for the employment" doctrines, citing *Olivera v. Hatco Chemical Co., supra,* 55 *N. J. Super.* 336, certification denied 30 *N. J.* 557 (1959). The factual situation present in *Olivera* has no similarity whatever to the case at bar. In seeking to apply those doctrines petitioner suggests, as above noted, that the police station was located "beyond" the bank and on that basis asserts that the "employment placed the decedent at the place where he was injured." Petitioner adds that "procuring the policeman * * * benefited the respondent * * *. and reduced the chances of a holdup or robbery on the bank" and adds that the "mutual benefit" doctrine is applicable, citing *Jasaitis v. City of Paterson,* 31 *N. J.* 81 (1959). Again these contentions ignore the basic question in the case, *i. e.,* where the day's employment commenced, and also again suggest a division of the decedent's duties, a contention which we have herein held to be unjustified.

In reaching the conclusion, as we do, that the judgment of the County Court should be affirmed we emphasize that each case of this type must be determined "in view of its peculiar facts and circumstances." 58 *Am. Jur., Workmen's Compensation Law, sec.* 214, *p.* 722. Giving full recognition to the prescribed liberal construction of the Workmen's Compensation Act, *Tocci v. Tessler & Weiss, Inc.,* 28 *N. J.* 582, 593 (1959), we hold that under the facts here present there should be no departure from the general rule that injuries resulting from hazards encountered by employees while going from their homes to the place where their initial work assignment of the day is to be undertaken (usually the employer's place of business but here, by respondent's direction, the police station) are not compensable. *Moosebrugger v. Prospect Presbyterian Church, supra,* 12 *N. J.* 212, 214 (1953) ; 58 *Am. Jur., Workmen's Compensation Law, sec.* 217, *pp.* 723–724.

Although as noted there are certain well defined exceptions to the general rule (several of which, as aforesaid, petitioner unjustifiably seeks to invoke), *Jasaitis v. City of Paterson,* 48 *N. J. Super.* 103, 109–110 (*App. Div.* 1957) ; *Ryan v. St. Vincent de Paul Roman Catholic Church,* 41 *N. J. Super.* 206 (*App. Div.* 1956), an award of compensation on the record before us would, in our opinion, be equivalent to nullifying the general rule which in a variety of factual situations has been repeatedly recognized and honored. The following observation by Judge Clapp in *Ryan, supra,* at *p.* 211 is pertinent:

"The rule is founded upon the supposition (which has a certain obvious cogency) that the parties would not have thought of the act of going to and from work as a part of the service for which the worker was employed."

The judgment of the County Court is affirmed.